UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRENDA WONG, PARKER JERRELL, JOSE BOX, AMBER PALMER, Individually and on Behalf of all Others Similarly Situated, | § § § § § | |
| *Plaintiffs,* | § § | CASE NO. 4:21-cv-4169 |
| v. | § § | |
| MAGIC MONEY LLC, SCOREMORE HOLDINGS, LLC, LIVE NATION WORLDWIDE, INC., LIVE NATION ENTERTAINMENT, INC., CEREMONY OF ROSES, LLC, and COR MERCHANDISING, LLC, | § § § § § § § § | JURY TRIAL DEMANDED |
| *Defendants.* | § | |

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**

Plaintiffs Brenda Wong, Parker Jerrell, Jose Box, Amber Palmer, Individually and on Behalf of all Others Similarly Situated, (collectively "Plaintiffs") by and through the undersigned counsel, bring this putative class action against Magic Money LLC, Scoremore Holdings, LLC, Live Nation Worldwide, Inc., Live Nation Entertainment, Inc., Ceremony of Roses, LLC, and Cor Merchandising, LLC (collectively "Defendants"). Plaintiffs make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to Plaintiffs Brenda Wong, Parker Jerrell, Jose Box, and Amber Palmer, which are based on their personal knowledge.

**NATURE OF THE ACTION**

1. This is a class action on behalf of all those owed refunds for their Magic Money purchases and costs related to the Astroworld Festival ("festival"), which was scheduled to take

place over two days from November 5 to 6, 2021, in Houston, Texas. The festival's second day was officially cancelled after a mass casualty event occurred on the evening of November 5, 2021.

2.      Due to the festival's cancellation, those that incurred costs, such as purchasing Magic Money to pay for the festival's rides and carnival games, should be refunded. Defendants caused substantial harm to Plaintiffs and the putative class by charging for Magic Money intended for use after the festival was cancelled, when a dense crowd of 50,000 festivalgoers surged towards the stage and crushed each other. Hundreds of festivalgoers sought medical attention, and ten died.

## THE PARTIES

3.      Plaintiff Brenda Wong is a Texas citizen and resides at 8000 Stonehill Drive, Plano, Texas 75025.

4.      Plaintiff Parker Jerrell is an Indiana citizen and resides at 665 A Street Northeast, Linton, Indiana 47441.

5.      Plaintiff Jose Box is a California citizen and resides at 81799 Villa Giardino Drive, Indio, California 92203.

6.      Plaintiff Amber Palmer is a Texas citizen and resides at 13501 Metric Boulevard, Unit 1, Austin, Texas 78727.

7.      Magic Money LLC ("Magic Money") is a Florida limited liability company with its principal place of business located at 5380 Gulf of Mexico Drive, Suite 105, Longboat Key, Florida 34228. It maintains a registered agent, Corporate Creations Network Inc., who can be served at 5444 Westheimer, Suite 1000, Houston, Texas 77056.

8.      Scoremore Holdings, LLC ("Scoremore") is a Delaware limited liability company with its principal place of business located at 5704 West Highway 290, Austin, Texas

78735. It maintains a registered agent, Corporate Creations Network Inc., who can be served at 5444 Westheimer, Suite 1000, Houston, Texas 77056.

9. Live Nation Worldwide, Inc. is a Delaware corporation with its principal place of business located at 9348 Civic Center Drive, Beverly Hills, California 90210. It maintains a registered agent, Corporate Creations Network Inc., who can be served at 5444 Westheimer, Suite 1000, Houston, Texas 77056.

10. Live Nation Entertainment, Inc. is a Delaware corporation with its principal place of business located at 9348 Civic Center Drive, Beverly Hills, California 90210. It maintains a registered agent, Corporate Creations Network Inc., who can be served at 5444 Westheimer, Suite 1000, Houston, Texas 77056. Live Nation Worldwide, Inc. and Live Nation Entertainment, Inc. are collectively referred to as "Live Nation."

11. Ceremony of Roses, LLC, is a Delaware limited liability company with its principal place of business located at 19905 Hamilton Pool Road, Dripping Springs, Texas 78620. It maintains a registered agent, eResidentAgent, Inc., who can be served at 823 Congress Avenue, Suite P-4, Austin, Texas, 78701.

12. Cor Merchandising, LLC is a California limited liability company with its principal place of business located at 15706 Crenshaw Boulevard, Gardena, California 90249. It maintains a registered agent, eResidentAgent, Inc., who can be served at 7801 Folsom Boulevard, Suite 202, Sacramento, California 95826.

13. Scoremore and Live Nation will be served through its counsel, who agreed to accept service, Robert Rivera, Jr., Laranda Walker, and Neal Manne of Susman Godfrey L.L.P. located at 1000 Louisiana, Suite 5100, Houston, Texas 77002.

**JURISDICTION AND VENUE**

14.     The Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332(d)(2), because this is a putative class action in which at least one member of each class is a citizen of a state different from that of at least one Defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and each of the proposed classes contains more than 100 class members.

15.     The Court has personal jurisdiction over Defendants. Scoremore and Ceremony of Roses, LLC maintain their principal places of business in Texas. Furthermore, Defendants purposefully availed themselves of the privilege of conducting activities in Texas and established minimum contacts sufficient to confer jurisdiction over them. The assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with due process. Nearly all Defendants maintain a registered agent in Texas. All Defendants market and sell their services and transact business in and directed towards Texas. Particularly, in the context of the festival, Defendants took part in a festival intended to "bring back the beloved spirit and nostalgia of Astro[w]orld" and pay homage to Houston, Texas, the hometown of Travis Scott, the festival's founder.

16.     Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to the alleged claims occurred or originated in the District.

**FACTUAL BACKGROUND**

17.     Astroworld Festival is a music festival that was scheduled to be a two-day event from November 5 to 6, 2021, in Houston, Texas. The festival was founded in 2018 by rapper and native Houstonian Travis Scott, born as Jacques Bermon Webster II. The festival is named after

Scott's 2018 album and held outdoors at NRG Park, the former site of the now-defunct amusement park, Six Flags Astroworld.

18.   Scoremore and Live Nation produced, organized, and promoted the festival.

19.   Ceremony of Roses, LLC managed the festival's onsite carnival rides and games and is a "partner service provider" to Magic Money. Cor Merchandising, LLC helped facilitate the transactions for Magic Money with festivalgoers.

20.   Plaintiffs and Class Members were heavily invested in the coveted ticket to a "larger-than-life multi-stage music festival experience."[1] The previous two festivals were sellouts. They were promised a two-day event, i.e., an "expanded two-day format."[2] Festivalgoers were told that "[t]he third annual music festival is expanding to two days this year due to overwhelming demand as well as rave reviews around the festival's incredibly curated lineup personally selected by Scott, and an experience that fans have now come to expect from his one-of-a-kind music festival."[3]

21.   Festivalgoers could only pay for the popular onsite carnival rides and games using the Magic Money system. Magic Money required festivalgoers to prepay through its website or at the festival and use a reloadable digital or physical card. Funds could be reloaded by visiting a Magic Money kiosk or using the Magic Money application. The following is a Magic Money card:

---

[1] *Travis Scott Announces Astroworld Festival 2021*, Live Nation Enter., Apr. 30, 2021, https://www.livenationentertainment.com/2021/04/travis-scott-announces-astroworld-festival-2021.
[2] *Id.*
[3] *Id.*

 

22.     Plaintiffs and Class Members were encouraged to prepay for what was advertised to be "significant savings" and to avoid the long lines at the festival. Plaintiffs and Class Members were charged service fees with each transaction, so they seemingly benefitted from prepaying during their initial transaction. The Instagram post, dated approximately November 4, 2021, ("the Instagram post") promoted Magic Money as follows:



23.     On November 5, 2021, the festival's doors opened around 1:00 p.m. There were reports of a stampede through the VIP entrance and people bypassing the security checkpoint.

24.     Just after 9:00 p.m. that day, with about 50,000 festivalgoers in attendance, the chaotic and energetic crowd began to rush towards the stage when Scott began his set. Festivalgoers were crushed as they were surrounded by mosh pits with little to no room to escape and breathe. Festivalgoers begged that the show be stopped but were ignored. The surge proved to

6

be a tragic and sudden end to the festival—with 300 festivalgoers treated at the field hospital, 25 festivalgoers hospitalized, and 10 festivalgoers dead.

25. In November 2019, at a previous Astroworld Festival, festivalgoers also sustained injuries and were hospitalized from being trampled, but that festival continued.

26. At 5:57 a.m. on November 6, 2021, the festival officially announced its cancellation via Instagram: "We are focused on supporting local officials however we can. With that in mind, the festival will no longer be held on Saturday." The festival site was the scene of an investigation.

27. Defendants have yet to address refunds for those who purchased Magic Money.

## A. Plaintiff Brenda Wong

28. Plaintiff Brenda Wong bought her festival tickets on the day tickets were made available, May 5, 2021. After seeing the Instagram post, she pre-purchased Magic Money on November 5, 2021, prior to arriving at the festival. She preloaded her Magic Money card with approximately $48.00 and was charged an additional $5.00 service fee.

29. She spent the $48.00 and reloaded the card with $90.00 with an additional $5.00 service fee. She then spent $65.00, expecting to have the remaining $25.00 to use for the remainder of the festival. She was charged for Magic Money as follows:[4]

| Magic Money Approximate Receipt Breakdown | |
|---|---|
| Prepaid Digital Card | $48.00 + Service Fee of $5.00 |
| November 5, 2021 Physical Card | $50.00 + Service Fee of $5.00 |
| November 5, 2021 Reloadable Credits | $40.00 |
| November 6, 2021 Balance | $25.00 |
| Total Paid | $148.00 |

30. She arrived at the festival on November 5, 2021, at approximately 4:00 p.m. and left the festival at approximately 10:35 p.m. She experienced the chaos of the deadly surge, being

---

[44] Plaintiff unexpectedly and without explanation received a $55.00 refund from Cor Merchandising, LLC.

pushed and shoved until she made her way out to the back of the crowd. She saw others receive medical attention and witnessed fellow festivalgoers attempt to flee to safety.

**B.  Plaintiff Parker Jerrell**

31. Plaintiff Parker Jerrell bought his festival tickets on the day tickets were made available, May 5, 2021. He saw an Instagram post advertising Magic Money and clicked on the link provided to pre-purchase Magic Money on November 3, 2021. He preloaded his Magic Money card with approximately $90.00 and was charged an additional $5.00 service fee.

32. He spent $55.00, expecting to have the remaining $45.00 to use for the remainder of the festival. He was charged for Magic Money as follows:

| **Magic Money Approximate Receipt Breakdown** | |
|---|---|
| Prepaid Digital Card | $90.00 + Service Fee of $5.00 |
| November 6, 2021 Balance | $45.00 |
| Total Paid | $95.00 |

33. He arrived at the festival on November 5, 2021, at approximately 6:30 a.m. and left the festival at approximately 10:30 p.m. He experienced the chaos of the deadly surge and was pushed and shoved until he made his way out to the back of the crowd with another festivalgoer's assistance. He saw others receive medical attention and witnessed fellow festivalgoers attempt to flee to safety. He sustained bruising to his feet and legs.

**C.  Plaintiff Jose Box**

34. Plaintiff Jose Box bought his festival tickets on May 5, 2021. After seeing the advertisement for Magic Money on the Astroworld website, he pre-purchased Magic Money on November 4, 2021. He preloaded his Magic Money card with approximately $170.00 and was charged an additional $5.00 service fee.

35. He spent none of the credits on his Magic Money card, expecting to have the entirety to use for the remainder of the festival. He was charged for Magic Money as follows:

8

| Magic Money Approximate Receipt Breakdown ||
|---|---|
| Prepaid Digital Card | $170.00 + Service Fee of $5.00 |
| November 6, 2021 Balance | $170.00 |
| Total Paid | $175.00 |

36.     He arrived at the festival on November 5, 2021, at approximately 12:00 p.m. with his wife and son and left the festival at approximately 11:00 p.m. with his family that same day.

**D.     Plaintiff Amber Palmer**

37.     Plaintiff Amber Palmer bought her festival ticket on May 5, 2021. After seeing the Instagram post, she pre-purchased Magic Money on November 5, 2021, prior to arriving at the festival. She preloaded her Magic Money card with approximately $50.00 and was charged an additional $5.00 service fee.

38.     She spent none of the credits on her Magic Money card, expecting to have the entirety to use for the remainder of the festival. She was charged for Magic Money as follows:

| Magic Money Approximate Receipt Breakdown ||
|---|---|
| Prepaid Digital Card | $50.00 + Service Fee of $5.00 |
| November 6, 2021 Balance | $50.00 |
| Total Paid | $55.00 |

39.     She arrived at the festival on November 5, 2021, at approximately 2:00 p.m. and left the festival at approximately 12:00 a.m. on November 6, 2021.

40.     Due to the festival's cancellation, Plaintiffs and the putative class should be refunded for their Magic Money purchases and costs.

## CLASS ALLEGATIONS

41.     Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1)-(3), and/or 23(c)(4)-(5), Plaintiffs, on behalf of themselves and all others similarly situated, brings this class action, and seeks to represent:

9

**Nationwide Class**
All individuals or entities who incurred costs in relation to Astroworld Festival 2021, such as for Magic Money, and were not refunded after the festival's cancellation.

42. In the event the Court declines to certify the Nationwide Class, Plaintiffs, on behalf of themselves and all other similarly situated, seek to represent:

**Texas Class**
All Texas residents who incurred costs in relation to Astroworld Festival 2021, such as for Magic Money, and were not refunded after the festival's cancellation.

**Indiana Class**
All Indiana residents who incurred costs in relation to Astroworld Festival 2021, such as for Magic Money, and were not refunded after the festival's cancellation.

**California Class**
All California residents who incurred costs in relation to Astroworld Festival 2021, such as for Magic Money, and were not refunded after the festival's cancellation.

43. Excluded from the Class are Defendants, any entities in which Defendants have a controlling interest, any of Defendants' officers, directors, or employees, any of Defendants' legal representatives, heirs, successors, and assigns, anyone employed with Plaintiffs' counsel firm, and any Judge to whom this case is assigned and his or her immediate family.

44. **Numerosity.** The Class is so numerous that joinder of all members is impracticable. While the exact number of Class Members is information not readily available at this time, as only Defendants possess the data to determine the number of those impacted and who purchased Magic Money, Plaintiffs have reasonable belief that there are thousands of potential Class Members. It has been reported that 50,000 people attended the festival on February 5, 2021.

45. **Typicality.** Plaintiffs' claims are typical of the claims of Class Members they seek to represent because Plaintiffs and all Class Members purchased Magic Money and/or incurred other costs related to the festival and were not refunded for those costs after the festival was cancelled as result of a mass casualty event.

46. **Adequacy.** Plaintiffs have retained counsel experienced in complex class actions and consumer protection litigation. Plaintiffs have no interests that are adverse to or in conflict with other Class Members. Plaintiffs will fully and adequately protect the interests of all Class Members.

47. **Commonality.** The questions of law and fact common to Class Members predominate over any questions that may impact only individual members, namely whether: Defendants breached their contracts with Plaintiffs and Class Members or were unjustly enriched; Defendants converted the money of Plaintiffs and Class Members; Defendants misled Plaintiffs and Class Members into and with purchasing Magic Money for the two-day festival event; Defendants negligently misrepresented Magic Money for its intended use over the two-day festival event; Defendants breached their contracts and/or committed a violation under Texas's Deceptive Trade Practices Act, negligent misrepresentation, conversion, and/or unjust enrichment; Plaintiffs and Class Members were harmed; and Defendants should be subjected to a declaratory judgment and statutory and other damages.

48. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class Members is impracticable. The prosecution of separate actions by individual Class Members would impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort, and expense and would assure uniformity of decision with respect to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

49. The interest of Class Members in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class is cohesive, and prosecution of the

action through representatives would be unobjectionable. The damages suffered by the Class are uniform and generally formulaic, and the expense and burden of individual litigation could preclude them from fair redressal of the wrongs done to them. Plaintiffs anticipate no difficulty in the management of this action as a class action.

## COUNT I: BREACH OF CONTRACT

50. The preceding paragraphs are incorporated by reference as if fully alleged herein.

51. A contract was formed between Plaintiffs and Class Members on the one hand and Defendants on the other hand with respects to purchases made through Defendants and/or Defendants' websites for Magic Money and/or other relevant costs.

52. The contracts that govern the transactions include the relevant Terms of Use and/or Sale, and the contracts allow for a refund in the event of the type of cancellation at hand.

53. Plaintiffs and Class Members performed their obligations under the contracts.

54. Defendants breached the contracts when they did not provide refunds as required.

55. Defendants' breaches were willful and not the result of mistake or inadvertence.

56. As a result of Defendants' breaches, Plaintiffs and Class Members have been damaged and seek contractual damages and any attorney fees, costs, and interest.

## COUNT II: VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES ACT

57. The preceding paragraphs are incorporated by reference as if fully alleged herein.

58. Plaintiffs and Class Members qualify as consumers who acquired by purchase goods or services from Defendants. Tex. Bus. & Com. Code § 17.45(4). The goods or services form the basis of the claims made by Plaintiff and Class Members, and Defendants violated the Deceptive Trade Practices Act ("DTPA").

59. The DTPA prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . . ." Tex. Bus. & Com. Code § 17.46(a). Defendants' unlawful conduct was a producing cause of damages to Plaintiffs and Class Members.

60. **DTPA §§ 17.46(b)(2), (5), (7), (9), and (12)** prohibit Defendants from: causing confusion as to the source of goods or services; representing goods or services have characteristics, uses, benefits, or quantities that they do not have; representing goods or services are of a particular standard if they are of another; advertising goods or services with the intent not to sell as such; and representing an agreement confers rights, remedies, or obligation that it does not have.

61. Defendants represented and led Plaintiffs and Class Members to believe they were purchasing Magic Money and incurring costs for an epic two-day event, and refunds would be issued in the case of the type of cancellation that occurred. Defendants' advertisements, marketing materials, and promotions misled Plaintiffs and Class Members when Defendants lured them into prepayment and then failed to disclose that refunds would not be honored to reimburse for costs.

62. Plaintiffs and Class Members were heavily invested in the "larger-than-life multi-stage music festival experience." The previous two festivals were sellouts. They were promised a two-day event, i.e., an "expanded two-day format." Live Nation specifically informed festivalgoers that "[t]he third annual music festival is expanding to two days this year due to overwhelming demand as well as rave reviews around the festival's incredibly curated lineup personally selected by Scott, and an experience that fans have now come to expect from his one-of-a-kind music festival."

63. Furthermore, the festival required the use of prepaid Magic Money to take part in the carnival rides and games. Plaintiffs and Class Members were encouraged, particularly through social media and the festival's website, to prepay for Magic Money ahead of the two-day festival

13

with promises of cost-savings and avoiding long lines at the festival. Plaintiffs and Class Members were also charged service fees, so they seemingly benefitted from prepaying during their initial Magic Money transaction.

64. **DTPA § 17.46(b)(24)** prohibits failing to disclose information concerning a good or service, which was known at the time of the transaction, if intended to induce the consumer into a transaction into which the consumer would not have entered.

65. Had they realized that they would not be able to recoup the costs related to the festival and after the festival's cancellation, Plaintiffs and Class Members would not have entered into the transactions with Defendants. Plaintiffs and Class Members would not have prepaid for Magic Money if they had known refunds would not be honored in the event of the type of cancellation that transpired.

66. **Express Misrepresentation.** Defendants sold goods or services to Plaintiffs and Class Members. They represented they were offering an expanded two-day festival event for which Plaintiffs and Class Members purchased Magic Money to be used for the festival's duration. Defendants cancelled the festival and have not issued reimbursements for Magic Money and the costs incurred. Defendants' representation was at the basis of the bargain, and Plaintiffs and Class Members were misrepresented to and suffered.

67. Plaintiffs and Class Members seek statutory damages and any attorney fees, costs, and interest.

## COUNT III: NEGLIGENT MISREPRESENTATION

68. The preceding paragraphs are incorporated by reference as if fully alleged herein.

69. Defendants made several representations to Plaintiffs and Class Members in relation to Magic Money sales and costs. Defendants represented refunds would be issued to

Plaintiffs and Class Members in case of the type of cancellation that occurred. Defendants failed to disclose that refunds would not be available for Plaintiffs and Class Members.

70. Given that the previous two festivals sold out, Plaintiffs and Class Members were heavily invested in gaining entry to and experiencing the "larger-than-life multi-stage music festival experience" that included carnival rides and games. The festivalgoers were sold on the fact that "[t]he third annual music festival is expanding to two days this year due to overwhelming demand as well as rave reviews around the festival's incredibly curated lineup personally selected by Scott, and an experience that fans have now come to expect from his one-of-a-kind music festival."

71. The festival required the use of prepaid Magic Money to take part in the carnival rides and games. Plaintiffs and Class Members were encouraged, particularly through social media and the festival's website, to prepay for Magic Money ahead of the two-day festival. Plaintiffs and Class Member were lured with promises of cost-savings and the convenience of avoiding long lines at the festival. Plaintiffs and Class Members were charged service fees, so they seemingly benefitted from prepaying with their initial Magic Money transaction.

72. Defendants had a pecuniary interest in making such representations since they profited from the transactions.

73. Defendants' representations proved to be false. After the festival was cancelled, appropriate refunds were not issued to Plaintiffs and Class Members, and the advertised benefits did not materialize. The Instagram post cancelling the festival did not mention refunds.

74. Plaintiffs and Class Members justifiably relied on the representations made by Defendants, and Defendants proximately caused them injury. Plaintiffs and Class Members seek actual and exemplary damages, costs, and interest.

## COUNT IV: CONVERSION

75. The preceding paragraphs are incorporated by reference as if fully alleged herein.

76. Plaintiffs and Class Members paid for Magic Money and other costs associated with the festival, which was cancelled.

77. Plaintiffs and Class Members should not have paid for such costs.

78. Defendants exercised dominion and control over and wrongfully retained the money Plaintiffs and Class Members used to pay for such costs.

79. Many Class Members demanded refunds, but Defendants have yet to issue refunds.

80. Defendants' interference damaged Plaintiffs and Class Members. Plaintiffs and Class Members seek actual damages, as well as attorneys' fees, costs, and interest.

## COUNT V: UNJUST ENRICHMENT

81. The preceding paragraphs are incorporated by reference as if fully alleged herein.

82. Plaintiffs and Class Members conferred a direct benefit onto Defendants when purchasing Magic Money and costs related to the festival.

83. Defendants exploited Plaintiffs and Class Members by encouraging prepayment and then failing to issue refunds after the festival's cancellation.

84. By retaining the money, Defendants were unjustly enriched. Defendants profited and retained the payments it wrongfully acquired when the festival was cancelled.

85. In the event Plaintiffs and Class Members lack an adequate remedy at law, Defendants are required to make restitution in equity pursuant to unjust enrichment.

## COUNT VI: DECLARATORY RELIEF

86. The preceding paragraphs are incorporated by reference as if fully alleged herein.

87. An actual controversy has arisen and now exists between Plaintiffs and Class Members, on the one hand, and Defendants, on the other hand, concerning refunds of Magic Money and other costs incurred related to the festival, which was cancelled.

88. Plaintiffs and Class Members contend Defendants breached their contracts and wrongfully charged Plaintiffs and Class Members and retained their money after the festival's cancellation. Plaintiffs and Class Members request the Court declare Defendants' conduct unlawful to prevent future controversies that would allow for continued injustices such as the present one.

## DAMAGES AND PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Individually and on Behalf of all Others Similarly Situated, request relief and judgment against Defendants as follows:

a. Certification of the proposed Class(es): Nationwide, Texas, Indiana, and California Classes;

b. Appointment of the undersigned as counsel for the proposed Class(es);

c. For all available damages in an amount to be proven at trial;

d. For a declaration that Defendants' conduct as alleged is unlawful;

e. Imposition of a constructive trust, an order granting restitution, and other such equitable relief the Court deems just and proper;

f. For all available actual, statutory, and, if appropriate, treble damages;

g. For all available exemplary and, if appropriate, punitive damages;

h. For pre-judgment and post-judgment interest at the maximum rate permitted by law;

i. For Plaintiffs' reasonable attorneys' fees, costs, and expenses; and

j. For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury on all issues so triable.

December 23, 2021

                Respectfully submitted,

                **THE POTTS LAW FIRM, LLP**
                */s/ Derek H. Potts*
                Derek H. Potts
                Texas Bar No. 24073727
                J. Ryan Fowler
                Texas Bar No. 24058357
                Batami Baskin
                Texas Bar No. 24078206
                POTTS LAW FIRM, LLP
                3737 Buffalo Speedway, Suite 1900
                Houston, Texas 77098
                Tel: (713) 963-8881
                Email: dpotts@potts-law.com

                **ATTORNEYS FOR PLAINTIFFS**