# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **BRENDA WONG, PARKER JERRELL, JOSE BOX, AMBER PALMER, Individually and on Behalf of all Others Similarly Situated,** | § § § § § | |
| *Plaintiffs,* | § § | **CASE NO. 4:21-cv-04169** |
| **v.** | § § | |
| **MAGIC MONEY LLC, SCOREMORE HOLDINGS, LLC, LIVE NATION WORLDWIDE, INC., LIVE NATION ENTERTAINMENT, INC., CEREMONY OF ROSES, LLC, and COR MERCHANDISING, LLC,** | § § § § § § § § | |
| *Defendants.* | § | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND AWARD OF ATTORNEY FEES, COSTS, AND EXPENSES, AND INCENTIVE AWARDS AND <u>INCORPORATED MEMORANDUM OF LAW IN SUPPORT</u>**

## Table of Contents

I.    INTRODUCTION ................................................................................................... 5

II.   THE LITIGATION AND SETTLEMENT. .......................................................... 6

III.  THE COURT-APPROVED NOTICES WERE SUFFICIENT AND DESIGNED TO
      REACH THE VAST MAJORITY OF SETTLEMENT CLASS MEMBERS. ......................... 8

IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND FINAL
      APPROVAL IS APPROPRIATE. ............................................................................. 10

   1.  No Fraud or Collusion Exists. .......................................................................... 11

   2.  The Complexity, Expense, and Likely Duration of Litigation Favors Approval of the
       Settlement. ....................................................................................................... 11

   3.  The Stage of Proceedings and Amount of Discovery Completed Supports Approval of the
       Settlement. ....................................................................................................... 11

   4.  The Probability of Plaintiffs' Success on the Merits Weighs in Favor of Approving the
       Settlement. ....................................................................................................... 12

   5.  The Settlement Falls Within the Range of Possible Recovery. ......................... 12

   6.  Opinion of Class Counsel and Representatives and Absent Class Members Favors Final
       Approval. ......................................................................................................... 13

V.   THE REQUESTED AWARD OF ATTORNEY FEES, COSTS, AND EXPENSES, AND
     INCENTIVE AWARDS IS REASONABLE. ............................................................. 13

   1.  The Requested Award of Attorney Fees, Costs, and Expenses is Reasonable. ................ 14

      a.   The Percentage Method. .............................................................................. 14

      b.   The Lodestar Method and the Johnson Factors. ............................................. 16

   2.  The Requested Award of Incentive Awards is Reasonable. ............................... 21

VI.  CONCLUSION ................................................................................................... 21

**Cases**

*Ayers v. Thompson,*
    358 F.3d 356 (5th Cir. 2009) ......................................................................... 10

*Bussie v. Allamerica Fin. Corp.,*
    50 F. Supp. 2d 59 (D. Mass. 1999) ................................................................ 13

*Camden I Condominum Ass'n, Inc. v. Dunkle,*
    946 F.2d 768 (11th Cir. 1991) ....................................................................... 14

*Copper Liquor, Inc. v. Adolph Coors Co.,*
    624 F.2d 575 (5th Cir. 1980) ......................................................................... 15

*De Hoyos v. Allstate Corp.,*
    240 F.R.D. 269 (W.D. Tex. 2007) .................................................................. 20

*Duhaime v. John Hancock Mut. Life Ins. Co.,*
    177 F.R.D. 54 (D. Mass. 1977) ........................................................................ 9

*Faught v. Am. Home Shield Corp.,*
    668 F.3d 1233 (11th Cir. 2012) ..................................................................... 14

*Gooch v. Life Invs. Ins. Co. of Am.,*
    672 F.3d 402 (6th Cir. 2012) ................................................................... 14, 18

*Grunin v. Int'l House of Pancakes,*
    513 F.2d 114 (8th Cir. 1975) ........................................................................... 9

*Hartless v. Clorox Co.,*
    273 F.R.D. 630 (S.D. Cal. 2011) ................................................................... 14

*In re Corrugated Container Antitrust Litig.,*
    643 F.2d 195 (5th Cir. 1981) ........................................................................... 9

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,*
    No. 3:08-MD-01998, 2010 WL 3341200 (W. D. Ky. Aug. 23, 2010) ........... 20

*In re Dell, Inc.,*
    No. A-06-CA-726-SS, 2010 WL 2371834 (W.D. Tex. June 11, 2010) ......... 13

*In re Heartland Payment Systems, Inc.,*
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) (C.J. Rosenthal) ..................... 7, 9, 10, 13

*In re Mercury Interactive Corp. Securities Litig.*,
 618 F.3d 988 (9th Cir. 2010) ......................................................... 14

*Johnson v. Ga. Highway Express, Inc.*,
 488 F.2d 714 (5th Cir. 1974) ......................................................... 15

*Jones v. Diamond*,
 636 F.2d 1364 (5th Cir. 1981) ....................................................... 20

*Mangone v. First USA Bank*,
 206 F.R.D. 222 (S.D. Ill. 2001) ....................................................... 9

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797 (1985)......................................................................... 8

*Reed v. General Motors Corp.*,
 703 F.2d 170 (5th Cir. 1983) .......................................................... 6

*Sauby v. City of Fargo*,
 No. 3:07-cv-10, 2009 WL 2168942 (D.N.D. July 16, 2009)........... 15

*Schulte v. Fifth Third Bank,*
 805 F. Supp. 2d 560 (N.D. Ill. 2011) .............................................. 15

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
 91 F. Supp. 2d 942 (S.D. Tex. 2000) .............................................. 10

*Turner v. Murphy Oil USA, Inc.*,
 472 F. Supp.2d 830 (E.D. La. 2007).............................................. 21

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
 669 F.3d 632 (5th Cir. 2012) .......................................................... 14

*Waters v. Int'l Precious Metals Corp.*,
 190 F.3d 1291 (11th Cir. 1999) ...................................................... 15

**Rules**

Fed. R. Civ. P. 23 ............................................................................. 8

Plaintiffs Brenda Wong, Parker Jerrell, Jose Box, Amber Palmer (collectively "Representative Plaintiffs"), Individually and on Behalf of all Others Similarly Situation ("collectively "Plaintiffs"), by and through the undersigned counsel ("Settlement Class Counsel"), hereby submit this Plaintiffs' Motion for Final Approval of Settlement and Award of Attorney Fees, Costs, and Expenses, and Incentive Awards and Incorporated Memorandum of Law in Support and show as follows:

## I.    INTRODUCTION.

On July 28, 2023, the Court, after a preliminary fairness hearing, briefing, arguments of counsel, and due consideration of the issues and the law, entered its order certifying the Settlement Class[1] for settlement purposes, preliminarily approved the proposed settlement set forth in the Settlement Agreement, and permitted notice of the settlement to be disseminated to the Settlement Class as set forth in the Settlement Agreement and the Court's Order from July 28, 2023. *See* Dkt. 77. The Settlement Class is defined as:

> All Persons who purchased Magic Money for the Astroworld Festival 2021 and were not issued a chargeback or refund for the Magic Money transaction. Excluded from the definition of Settlement Class are Defendants and their officers and directors, and those Persons who timely and validly request exclusion from the Settlement Class.

*Id.* at 2.

The settlement provides an excellent recovery for the Settlement Class, which is tailored to the unique facts of this litigation, especially given the nature of the claims at issue and the risk of further proceedings through contested litigation. All four (4) law firms for Plaintiffs and Defendants, and all four (4) Representative Plaintiffs endorse the class action settlement before the Court. *See* Dkt. 72-2. By September 15, the appropriate notices were distributed, published,

---

[1] All terms, as used herein, shall have the same meaning as those defined in the Settlement Agreement. *See* Dkt. 72-2.

and made available on the settlement website, in accordance with the terms of the Court's Order on July 28, 2023, and as affirmed in the Declaration of Derek H. Potts. *See* Dkt. 77, 82. The Settlement Class Members' reaction to the settlement has been positive. Out of the approximately 1,540 Settlement Class Members to whom Summary Notices were sent via email, as well as any other Settlement Class Members who received notice via the Houston Chronicle, the Press Release, and the settlement website, there were no objections and just one (1) opt-out.

As illustrated herein, through an analysis of the factors outlined by the Fifth Circuit Court of Appeals, the settlement is fair, reasonable, and adequate. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). Furthermore, Plaintiffs' request for an award of attorney fees in the amount of $78,725.00, costs and expenses in the amount of $7,200.00, and incentive awards for each Representative Plaintiffs in the amount of $200 is reasonable. Thus, respectfully, the Court should grant final approval of the settlement, and award the attorney fees, costs, and expenses, and incentive awards requested herein.

## II.    THE LITIGATION AND SETTLEMENT.

This litigation stems from Magic Money purchases related to the Astroworld Festival ("festival"), which was scheduled to take place over two days from November 5 to 6, 2021, in Houston, Texas. Magic Money was the exclusive means to pay for the festival's rides and carnival games. Plaintiffs allege, in main part, that, due to the cancellation of the festival's second day because of a mass casualty event, those that purchased Magic Money should be refunded for such purchases. On November 10, 2021, Plaintiffs first filed a putative class action in Texas state court and eventually nonsuited the state court action prior to refiling in federal court.

Then, on December 23, 2021, Plaintiffs brought forth a putative class action before this Court. *See* Dkt. 1. Plaintiffs sued six entities that were involved with the festival (collectively

6

"Defendants"). Magic Money LLC ("Defendant Magic Money") provided the software and technological platform to purchase and issue Magic Money cards for use at the festival. Ceremony of Roses, LLC and Cor Merchandising, LLC (collectively "Defendant Ceremony of Roses") planned the festival's rides and carnival games. Scoremore Holdings, LLC, Live Nation Worldwide, Inc., and Live Nation Entertainment, Inc. (collectively "Defendant Live Nation") organized the festival and were involved in the design, marketing, and promotion of Magic Money related to the festival. Plaintiffs alleged breach of contract, violations of the Texas Deceptive Trade Practices Act ("DTPA"), negligent misrepresentation, conversion, and unjust enrichment.

Early in the litigation process, Plaintiffs and Defendants (collectively "parties") began extensive settlement discussions. After limited discovery to aid in reaching a settlement, the parties informed the Court of their intention to settle and move forward with class certification. See Dkt. 50. A proposed settlement agreement was reached after arms-length negotiations. *See* Dkt. 72-2. The Settlement Agreement is intended to resolve all claims arising from Magic Money purchases for the festival and provide for a specified refund or reimbursement of such purchases to Settlement Class members. Importantly, Settlement Class members are not releasing any claims for personal injuries or other injuries or damages not pertaining to Magic Money purchases for the festival.

The Settlement Agreement provides substantial benefits to the Settlement Class. Defendant Live Nation is to provide a Total Settlement Fund of $335,000.00. *See* Dkt. 72-2 ¶ 2.1. Eligible Settlement Class Members will receive specified refund amounts of their Magic Money purchases when paid with debit and credit cards and not issued a chargeback or refund on the purchases. Refunds are to be remitted via the original payment methods. *Id.* ¶ 2.2. Eligible Settlement Class Members will receive specified reimbursement amounts of their Magic Money purchases when

paid with cash or any payment means other than debit or credit card. Reimbursements are to be remitted via check after undergoing a claim review process. *Id.* ¶ 2.3.

As part of the settlement, Defendant Ceremony of Roses is to facilitate the refund process to eligible Settlement Class Members, which consists of First Data issuing specified refunds via the original payment method. *Id.* ¶ 2.2. Settlement Class Counsel is to facilitate the reimbursement process to eligible Settlement Class Members, which consists of issuing specified reimbursements via check for valid claims after a claim review process. *Id.* ¶ 2.3.

Additionally, Settlement Class Counsel is to be paid fair and reasonable attorney fees, costs, and expenses, including expenses related to class notice and administration, out of the Total Settlement Fund. *Id.* ¶ 7.1, 7.2. Representative Plaintiffs are to receive an incentive award of $200 each out of the Total Settlement Fund. *Id.* ¶ 7.2.

All four (4) Representative Plaintiffs support the settlement. *See* Dkt. 72-2. In light of the challenge and expense of further litigation, Representative Plaintiffs and their counsel believe that the proposed settlement is an excellent result for the Settlement Class. Representative Plaintiffs submit that the settlement is fair, adequate and reasonable, and should be approved by the Court, along with the requested award of attorney fees, costs, and expenses, and incentive awards.

### III.   THE COURT-APPROVED NOTICES WERE SUFFICIENT AND DESIGNED TO REACH THE VAST MAJORITY OF SETTLEMENT CLASS MEMBERS.

Constitutional due process requires that absent class members be provided the best notice practicable, reasonably calculated to apprise them of the pendency of the action and affording them the opportunity to object. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); Fed. R. Civ. P. 23(c)(2)(B). There are no rigid rules for settlement notice. *In re Heartland Payment Systems, Inc.*, 851 F. Supp. 2d 1040, 1060 (S.D. Tex. 2012) (C.J. Rosenthal). The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standard

imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975). Here, the Court approved the form and content of the notices. *See* Dkt. 77 ¶ 8. The Court found that the publication and availability of the notice, as set forth in its Order, was the best practicable under the circumstances and constituted due and sufficient notice to all persons entitled to receive it. *Id.* ¶ 10. Additionally, the notice constituted a measurable benefit to the Settlement Class. *See, e.g., Mangone v. First USA Bank*, 206 F.R.D. 222, 225 (S.D. Ill. 2001) (Defendants paid the costs of identifying and notifying the class members and administering the settlement, all of which, in the event the case was fully litigated and the class prevailed, would have been deducted from the class recovery. By settling, the class is avoiding the deduction of those substantial costs from its recovery.).

    As summarized herein and explained in detail in the Declaration of Derek H. Potts, notice was accomplished in accordance with the Court-approved publication plan. *Id.* ¶¶ 8–9; Dkt. 82. Pursuant to the Court's Order, Summary Notices were sent via email to approximately 1,540 Settlement Class Members with known email addresses. *See* Dkt 82 ¶¶ 5–6. Notice was also published in the Houston Chronicle on three separate days. *Id.* ¶ 7. The Houston Chronicle has approximately 825,000 daily readers.[2] The notice was published in the Legal Notices section with a highly visible ad size. *Id.* ¶ 7. Settlement Class Counsel also issued a Court-approved press release to PR Newswire. *Id.* ¶ 11. In addition, notice was published on the settlement website, www.magicmoneyrefund.com, in English and with Spanish-language assistance offered. *Id.* ¶¶ 8–9. The settlement website allows Settlement Class Members to view information about the settlement, including copies of the Summary Notice, Banner, Detailed Notice, Press Release, Settlement Agreement, Motion for Certification of Class and Proposed Notice and Incorporated

---

[2] *See Houston Chronicle*, HEARST (last visited November 15, 2023), https://www.hearst.com/newspapers/houston-chronicle.

Memorandum of Law in Support, and the accompanying Order. Thus, the notice publication and availability, with its extensive and thorough efforts, provided the Settlement class with the best notice practicable under the circumstances.

IV.    **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND FINAL APPROVAL IS APPROPRIATE.**

Representative Plaintiffs respectfully request that the Court grant final approval of the settlement at the Final Fairness Hearing and find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Settlement Agreement was reached after serious, informed, and noncollusive negotiations over several months. The fact that the settlement was reached after arm's-length negotiations by experienced counsel creates a presumption that the settlement is fair, reasonable, and adequate. *See, e.g., Duhaime v. John Hancock Mut. Life Ins. Co.,* 177 F.R.D. 54, 68 (D. Mass. 1977) ("In general, a settlement arrived at after genuine arm's length bargaining may be presumed to be fair.").

The final approval analysis should occur mindful of "the policy of law generally to encourage settlements." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981) (citations omitted). The uncertainty of the outcome of the litigation, as well as the desire to avoid the expense of litigation lay behind Congress' creation of Rule 23(e). *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 959 (S.D. Tex. 2000). The Court's opinion in *In re Heartland Payment Systems* enforces that a proposed settlement should comport with the Fifth Circuit's six *Reed* factors in order for the class settlement to be deemed fair, reasonable, and adequate:

    (1) the existence of fraud or collusion behind the settlement;
    (2) the complexity, expense, and likely duration of the litigation;
    (3) the stage of the proceedings and the amount of discovery completed;
    (4) the probability of plaintiffs' success on the merits;
    (5) the range of possible recovery; and
    (6) the opinions of the class counsel, class representatives, and absent class members.

*See* 851 F. Supp. 2d at 1063–69.

**1. No Fraud or Collusion Exists.**

The parties have negotiated for months at arm's length, first agreeing to a Memorandum of Understanding and then executing the Settlement Agreement. The parties have not agreed to the amounts of Settlement Class Counsel's attorney fees, costs, and expenses, or incentive awards to Representative Plaintiffs, but have agreed, pursuant to the Settlement Agreement, that such amounts would be paid out of the Total Settlement Fund. *See* Dkt 72-2 ¶ 7.1. First Data requested an award of attorney fees and expenses in the amount of $20,000 from the Total Settlement Fund, which the Court approved. *See* Dkt 75, 83.

**2. The Complexity, Expense, and Likely Duration of Litigation Favors Approval of the Settlement.**

Continued litigation would be time-consuming and result in high costs and expenses, with no certainty as to the outcome. The litigation would consist of complex discovery and motion practice, particularly with each Defendant filing dispositive motions. Moreover, the litigation would have to survive what would likely be a lengthy, complicated trial and appeal to confer a benefit onto the Settlement Class.

The settlement delivers a real and substantial remedy, which fairly, reasonably, and adequately addresses the situation confronting the Settlement Class Members without the risk or delay inherent in prosecuting this matter through trial and appeal. Therefore, this factor favors the final approval of the settlement.

**3. The Stage of Proceedings and Amount of Discovery Completed Supports Approval of the Settlement.**

"The key issue is whether 'the parties and the district court possess ample information with which to evaluate the merits of the competing positions.'" *In re Heartland Payment Systems*, 851 F. Supp. 2d at 1066 (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2009)). Formal

discovery is not necessary to establish this factor. *See id*. The parties engaged in initial discovery specifically aimed at reaching a settlement. Defendants provided documents and answers responsive to discovery requests, and, in addition, Ceremony of Roses, LLC presented its corporate representative for deposition. The parties also received certain records subpoenaed from First Data. Both the Court and the parties possess sufficient information to evaluate the litigation.

**4. The Probability of Plaintiffs' Success on the Merits Weighs in Favor of Approving the Settlement.**

The litigation would have to overcome many obstacles to succeed on the merits, including, in all likelihood, motions to dismiss aimed at substantially narrowing the causes of actions asserted against Defendants. Defendants have maintained that they deny all of Plaintiffs' claims and that they did nothing wrong. While Settlement Class Counsel opposes that position, it demonstrates that there would be significant hurdles to clear in order to litigate this case before Settlement Class Members could recover anything. Thus, the settlement confers significant benefits to the Settlement Class because it provides for a recovery without the risks or delays of continued litigation. The settlement allows for most Settlement Class members to attain nearly full refunds or reimbursements of their Magic Money purchases for the festival.

**5. The Settlement Falls Within the Range of Possible Recovery.**

The litigation's potential range of recovery is difficult to precisely define. On the lowest end, Plaintiffs may not receive any damages. On the highest end, Plaintiffs may receive treble their damages plus attorney fees, costs, and expenses upon succeeding on a DTPA claim. It is important to recognize that, under a viable breach of contract claim, Plaintiffs would likely be compensated for the unused portion of their Magic Money purchases for the festival, plus attorney fees, costs, and expenses. The settlement provides for nearly full refunds to most Settlement Class Members of Magic Money purchases for the festival when accounting for Settlement Class Counsel's

proposal for attorney fees, costs, expenses, and incentive awards, and First Data's award of $20,000 for attorney fees and expenses. It is estimated that pursuant to such a proposal, a typical refund or reimbursement would account for 83.6% of the transaction amount, with a First Data refund at 82.4% of the transaction amount.

### 6. Opinion of Class Counsel and Representatives and Absent Class Members Favors Final Approval.

Settlement Class Counsel endorses the settlement because it provides compensation for the Settlement Class Members for their Magic Money purchases for the festival. The Representative Plaintiffs have agreed to the settlement, and it is believed that their views accurately reflect the views of the absent class members. In addition, notice was provided to members of the Settlement Class, who were given a full opportunity to object to any of the terms of the proposed settlement or opt out of the settlement. As of this date, just one potential Settlement Class Member has chosen to opt out of the Settlement Class. Because all six *Reed* factors favor settlement, the Court should grant final approval of the settlement.

### V.    THE REQUESTED AWARD OF ATTORNEY FEES, COSTS, AND EXPENSES, AND INCENTIVE AWARDS IS REASONABLE.

The requested award of attorney fees in the amount of $78,725.00, costs and expenses in the amount of $7,200.00, and incentive awards to each Representative Plaintiff in the amount of $200.00 are appropriate. *See* Dkt 72-2 ¶ 7.2. Defendant Live Nation has provided for a Total Settlement Fund that would account for such amounts, which are subject to review and approval by the Court. As illustrated in the Declaration of Derek H. Potts, attached hereto as Exhibit 1, the total attorney fees by Settlement Class Counsel in this matter are in excess of $109,500.00, and the total costs and expenses incurred are in excess of $7,200.00. Both amounts are in excess of

what Settlement Class Counsel has proposed the Court award to them in attorney fees, costs, and expenses.

**1.   The Requested Award of Attorney Fees, Costs, and Expenses is Reasonable.**

In common-fund cases, Fifth Circuit courts have traditionally approached an award of attorneys' fees using either (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund or (2) the "lodestar" method, which is a calculation of the reasonable number of hours expended on litigation multiplied by a reasonable hourly rate, and, in its discretion, applying an upward or downward multiplier based on the *Johnson* factors. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642–43 (5th Cir. 2012). In *Dell*, the Fifth Circuit confirmed that district courts have discretion to determine the proper fee award in common-fund cases by using either the percentage or lodestar methods, cross-checked with the *Johnson* factors. *Id.* Courts in the Southern District of Texas have often decided that the best approach in a class action with a common fund is to use the percentage method with the lodestar method as a cross-check. *In re Heartland Payment Systems, Inc.*, 851 F. Supp. 2d at 1072–73.

**a.   The Percentage Method.**

Calculating attorneys' fees under the percentage method first requires a court to determine the actual monetary value conferred to the class members by the settlement. *Bussie v. Allamerica Fin. Corp.*, 50 F. Supp. 2d 59, 74 (D. Mass. 1999). The court then sets the benchmark percentage to be applied to this value. After setting the benchmark, the court in *In re Dell, Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834 (W.D. Tex. June 11, 2010), decided it was appropriate to apply the *Johnson* factors to determine whether a positive or negative adjustment of the benchmark is warranted. *Id.* at *13. The Fifth Circuit has approved this "blended percentage method" or "hybrid percentage method." 2012 WL 375249, at *6.

The value of a settlement should be based only on the benefits actually delivered. *In re Heartland Payment Systems, Inc.*, 851 F. Supp. 2d at 1060. The total value of the settlement in this matter is the Total Settlement Fund - $335,000.00. $228,275.00 of the fund will be used to refund or reimburse Settlement Class Members. The rest of the fund, $106,725.00, also conveys a benefit to the Settlement Class. $78,725.00 accounts for Settlement Class Counsel's fees, which are still best viewed as an aspect of the Settlement Class' recovery. *Id.* at 1062. Approximately $3,722.67 is the cost for Settlement Class Counsel to implement the notice program. Courts often include the costs of notice when calculating the value of the class action settlement. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 569 & n.8, 597 (N.D. Ill. 2011); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011); *Sauby v. City of Fargo*, No. 3:07-cv-10, 2009 WL 2168942, at *3 (D.N.D. July 16, 2009). Approximately $3,500 accounts for the future cost of administering the claims process for reimbursements. $800 accounts for the $200 incentive awards for each Representative Plaintiff. Lastly, $20,000 accounts for attorney fees and costs awarded to First Data by the Court for facilitating the refund process and issuing specified refunds to certain Settlement Class Members.

The next step is to determine the appropriate percentage benchmark. "The 'majority of common fund fee awards fall between 20% and 30% of the fund.'" *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012) (quoting *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999)). Specifically, the Ninth and Eleventh Circuit typically use a 25% benchmark for common-fund cases. *E.g., Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2012) (citing *Camden I Condominum Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774–75 (11th Cir. 1991)); *In re Mercury Interactive Corp. Securities Litig.*, 618 F.3d 988, 992 n.1 (9th Cir. 2010).

Using 25% as the benchmark, and before any positive or negative adjustment, the result is a fee award of $83,750.00. This award is actually about $5,000 greater than the attorney fee requested by Settlement Class Counsel ($78,725.00), which is only about 23.5% of the Total Settlement Fund.

### b. The Lodestar Method and the Johnson Factors.

Courts in the Fifth Circuit also typically approach an award of attorney fees using the "lodestar" method, which is a calculation of the reasonable number of hours expended on litigation multiplied by a reasonable hourly rate. *See Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 583 n.15 (5th Cir. 1980). The lodestar is then adjusted upward or downward based on an analysis of the *Johnson* factors:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions;
> (3) the skill requisite to perform the legal service properly;
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved and the results obtained;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

During the course of this litigation, Settlement Class Counsel has reported in excess of 237 hours and over $7,200.00 in anticipated costs. Additional time will be spent in preparation for the Final Fairness Hearing and in dealing with issues that arise in effectuating the settlement. The reported fees expended by Settlement Class Counsel in this litigation are in excess of $109,500.00. *See* Exhibit 1. While Settlement Class Counsel is not seeking a percentage of the Total Settlement

Fund, the Court has the option of considering the reasonableness of $78,725.00 in attorney fees in relation to the *Johnson* factors juxtaposed with the actual fees incurred – over $109,500.00. As illustrated below, the lodestar method and the *Johnson* factors readily support the requested award of attorney fees, costs, and expenses.

i. **The time and labor required, and difficulty of the questions involved, and the skill requisite to perform the legal services properly.**

Settlement Class Counsel has reported in excess of 237 hours working on this litigation and over $7,200.00 in anticipated costs and expenses. Additional attorney time, costs and expenses will be expended and incurred in effectuating the settlement. Settlement Class Counsel has devoted a significant portion of their time to the investigation, prosecution, and settlement of this case on behalf of the Settlement Class. The issues presented by this litigation are novel and difficult, and substantial skill was required to achieve a successful settlement, especially in determining how to structure the refund and reimbursement process to best serve the Settlement Class. As illustrated herein and in the Settlement Agreement, Settlement Class Counsel performed the duties and responsibilities delegated to it by the Court in a capable manner.

ii. **Likelihood of preclusion of other employment.**

The efforts of Settlement Class Counsel in the management of this class action necessarily infringed upon the time and opportunity they would have had available to accept other employment. The reality of complex cases is that work is not easily shifted to other attorneys in the firm not familiar with the matter, with the result that substantially less time becomes available to Settlement Class Counsel to attend to other matters. Time devoted to this litigation and its resolution necessarily limited the time available for other litigation.

### iii.    The customary fee for similar work in the community.

The customary contingency fee for representation of many contingency cases with common fund fee awards, in much less complex cases than this class action, often ranges from 20% to 30% of the gross award plus costs for cases requiring the institution and prosecution of litigation. *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012). $85,925.00 in attorneys' fees, costs, and expenses is less than the customary contingency fee typically awarded, particularly given the fact that counsel's combined lodestar, costs, and expenses are in excess of the $85,925.00 being requested.

### iv.    The amount involved and the results obtained.

Settlement Class Counsel negotiated a monetary settlement that represents an excellent result for the Settlement Class: Defendant Live Nation has provided a total settlement fund of $335,000, which accounts for specified refunds and reimbursements of their Magic Money purchases for the festival, in addition to the costs of notice, claim administration, dispute resolution, and attorney fees, costs, and expenses for Settlement Class Counsel and attorney fees and costs for First Data.

### v.    Time limitations imposed by the client or the circumstances.

This case has required significant attention by Settlement Class Counsel. Frequently, issues requiring immediate attention arose, and such matters were attended to expeditiously and properly.

### vi.    The nature and length of the professional relationship with the client.

Representative Plaintiffs and Settlement Class Members were kept abreast of the development in this litigation throughout its pendency and by way of the notice program, all as applicable and appropriate.

vii.    **The experience, reputation, and ability of the attorneys.**

The Court has been made aware, through its relationship with Settlement Class Counsel in these proceedings, of their ability, experience, and reputation as experienced class action litigation counsel. For instance, Plaintiffs' lead counsel, Derek H. Potts, is a highly qualified and experienced attorney who has been regularly appointed to serve in leadership capacities in complex mass actions in federal courts across the United States. This has included being appointed as Co-Lead Counsel in multiple federal Multidistrict Litigations, including *In Re: C.R. Bard, Inc., Pelvic Repair System Products Liability Litigation*, 2:10-md-02187, in the United States District Court for the Southern District of West Virginia, *In Re: Mentor Corp. Obtape Transobturator Sling Products Liability Litigation*, 4:08-md-02004, in the United States District Court for the Middle District of Georgia, and *In Re: Downstream Addicks and Barker (Texas) Flood Control Reservoirs v. USA*, 17-9002, in the United States Court of Federal Claims. He regularly practices before the federal Judicial Panel on Multidistrict Litigation establishing new federal court consolidations. He was recently appointed as Co-Lead Counsel in a consolidated class action case, *In Re: Generali COVID-19 Travel Insurance Litigation*, 1:20-md-02968, in the United States District Court for the Southern District of New York. He also served as class counsel for the states of New York, New Jersey, and Arkansas in *In Re: AT&T Mobility Wireless Data Services Sales Tax Litigation*, 1:10-cv-02278, in the United States District Court for the Northern District of Illinois, a national class action related to reimbursements to cell phone users nationwide. He most recently pursued a class action case in *J&M Plastics, Inc., et al. v. MidAmerican Energy Services, LLC*, 2:21-cv-00206, in the United States District Court for the Eastern District of Texas, related to overcharges of electricity to customers during Winter Storm Uri.

### viii.    Whether the fee is fixed or contingent.

Settlement Class Counsel were appointed by the Court to look after the best interest of the Class. Representation of the Representative Plaintiffs was originally undertaken on contingent fee bases. Contingent fees, as opposed to fixed fees, are commonplace in plaintiff practice. *See, e.g., Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result."). But here, Defendant Live Nation has provided for a Total Settlement Fund that would account for Settlement Class Counsel's requested attorney fees, costs and expenses, subject to review and approval by the Court.

### ix.    The undesirability of the case.

Settlement Class Counsel took on several large corporations with access to very substantial legal resources and talent. It required determination and effort to resolve this matter with benefits to the Settlement Class to the degree that occurred. The case consumed significant financial resources and time of Settlement Class Counsel. They initially agreed to take on Representative Plaintiffs' cases on a contingency fee basis with no guarantee of receiving compensation, assuming a high degree of risk. At the inception of the litigation, it was less than clear that a positive result for Plaintiffs would be obtained. No one knew the amount of time that would be involved, or the costs of advancing the case and preparing it for settlement or trial, except that the case had inherent risks and would be an uphill battle. In light of these considerations, the risks assumed by Settlement Class Counsel were substantial.

**x.      Comparable awards in similar cases.**

Compensation for an action of this complex nature should result in an award of compensation correlated with the difficulty and risks of the case. Settlement Class Counsel respectfully submits that an award of attorney fees, costs, and expenses of $85,925.00 is reasonable under the lodestar approach (and is less than the amounts incurred by counsel), is supported by the *Johnson* factors, and is justified by the record and the time expended by counsel in this matter in achieving the settlement.

**2.   The Requested Award of Incentive Awards is Reasonable.**

Representative Plaintiffs respectfully request incentive awards in the amount of $200 each for their services on behalf of the Settlement Class. It is common for courts to permit payments to class representatives greater than those received by settlement class members generally. *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp.2d 830, 870 (E.D. La. 2007). Defendant Live Nation has provided for a Total Settlement Fund that would account for such amounts, which are subject to review and approval by the Court. Much larger incentive awards have been approved by courts in this Circuit, and the requested awards are therefore appropriate. *See, e.g., De Hoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) (approving award of $5,000 to named plaintiffs in Rule 23(b)(2) class action suit); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *15 (W. D. Ky. Aug. 23, 2010) (approving incentive awards of $500.00 per Representative Plaintiff).

## VI.    CONCLUSION

Representative Plaintiffs and Settlement Class Counsel respectfully move the Court for entry of an order:

1.  Finding that the Settlement Agreement is fair, reasonable, and adequate, and in the best interest of the Settlement Class, and granting final approval to the settlement;

2. Awarding the attorney fees, costs, and expenses, and incentive awards requested herein; and

3. Granting such other relief as the Court may deem just and appropriate.

November 21, 2023

Respectfully submitted,

THE POTTS LAW FIRM, LLP

By: /s/ Derek H. Potts
Derek H. Potts
Texas Bar No. 24073727
J. Ryan Fowler
Texas Bar No. 24058357
Natalie E. Barden
Texas Bar No. 24132020
POTTS LAW FIRM, LLP
3737 Buffalo Speedway, Suite 1900
Houston, Texas 77098
Tel: (713) 963-8881
Email: dpotts@potts-law.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF CONFERENCE

The undersigned certifies that Plaintiffs' counsel has conferred with Defendants' counsel on November 21, 2023. Defendants' counsel has not yet responded with whether they oppose the Motion. Plaintiffs' counsel has requested that they inform us whether they are opposed before the Final Fairness Hearing.

/s/ Derek H. Potts
Derek H. Potts

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on this the 21st day of November 2023 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule 5.3.

<span style="margin-left: 4em">*/s/ Derek H. Potts*</span>
<span style="margin-left: 4em">Derek H. Potts</span>